IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

## COMPLAINT

| | | |
|---|---|---|
| JANE DOE, for herself and as next friend to her minor child, MINOR DOE, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| vs. | ) ) ) | HON. |
| SOUTHFIELD PUBLIC SCHOOLS; THE BOARD OF EDUCATION OF SOUTHFIELD PUBLIC SCHOOLS; DR. JENNIFER GREEN, in her official and individual capacities; ASHANTI BLAND, in her official and individual capacities; YVETTE WARE-DeVAULL, in her official and individual capacities; TALISHA BELK, in her official and individual capacities; DARRELL B. JOYCE, in his official and individual capacities; and JILLIAN HOLLOWAY, in her official and individual capacities. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| DEFENDANTS. | ) ) | |

Carla D. Aikens (P69530)
Rejanaé M. Thurman (P85701)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiffs*
615 Griswold St., Ste. 709
Detroit, MI 48226
Tel:  (844) 835-2993
Fax:  (877) 454-1680
carla@aikenslawfirm.com
rejanae@aikenslawfirm.com

---

*There are no other pending or prior actions between these parties.*

1

## JURY DEMAND

COMES NOW Plaintiff Jane Doe, as next friend of child Minor Doe, and hereby demands trial by jury, to the extent permitted by law.

As for her Complaint against Defendants, Plaintiff states the following:

## PARTIES, JURISDICTION, AND VENUE

1.      At all times relevant hereto Plaintiff and Minor Doe were residents of the City of Southfield, County of Oakland and State of Michigan.

2.      That Plaintiff Jane Doe will be appointed Next Friend of the Minor-Plaintiff, Minor Doe once the case is assigned to a judge and a case number is issued.

3.      Defendant Southfield Public Schools (hereinafter "SPS") is a government entity duly authorized to operate as a public school district in the County of Oakland and State of Michigan.

4.      Defendant Dr. Jennifer Green is and was at all relevant times an employee acting in her individual capacity and under color of state law for Defendant SPS. Defendant Green is sued in her official and individual capacities.

5.      Defendant Ashanti Bland is and was at all relevant times an employee acting in her individual capacity and under color of state law for Defendant SPS. Defendant Bland is sued in her official and individual capacities.

6.      Defendant Yvette Ware-DeVaull is and was at all relevant times an employee acting in her individual capacity and under color of state law for Defendant SPS. Defendant Ware-DeVaull is sued in her official and individual capacities.

7.      Defendant Talisha Belk is and was at all relevant times an employee acting in her individual capacity and under color of state law for Defendant SPS. Defendant Belk is sued in her official and individual capacities.

8.      Defendant Darrell B. Joyce is and was at all relevant times an employee acting in her individual capacity and under color of state law for Defendant SPS. Defendant Joyce is sued in his official and individual capacities.

9.      Defendant Jillian Holloway is and was at all relevant times an employee acting in her individual capacity and under color of state law for Defendant SPS. Defendant Holloway is sued in her official and individual capacities.

10.     Defendants Green, Bland, Ware-DeVaull, Joyce, Belk and Holloway hereinafter referred to as "Individual Defendants".

11.     Jurisdiction is proper because on the basis of federal question jurisdiction pursuant to 42 U.S.C. § 1983 ("Section 1983").

12.     This is a suit authorized and instituted pursuant to the Civil Rights Act of 1866, Section 1983; and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in this Court pursuant to Section 1983, because the violations of giving rise to Plaintiff's claims occurred in this district.

14.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## GENERAL ALLEGATIONS

15.     Minor Doe, child of Jane Doe, was at all times relevant to this Complaint and prior to his/her expulsion from SPS, a 7th grader at University Middle School Academy ("UMSA"), a school within SPS.

3

16.     Minor Doe was a good student, receiving mostly A's and B's.

17.     SPS was closed for winter break from December 23, 2023 until January 8, 2024.

18.     Over the break, Minor Doe and another student were – unbeknownst to their parents – jointly in charge of an Instagram "confessions" page, wherein people could submit information via a Google form link that they would post to the Instagram account.

19.     Before it was shut down, approximately 246 Google form responses had been received.

20.     All of the responses on the Google form were anonymous, as the form did not require people to include an email address.

21.     Minor Doe and the other student did not draft any of the responses but rather uploaded pictures of the responses that were received through the Google form.

22.     Over the winter break, on or about December 30, 2023, the Southfield Police Department became involved in a bullying situation in which another 7th grade UMSA student was the victim, which involved high school students, which led them to the Instagram page because the student being bullied was mentioned in posts on the page.

23.     The police report related to the incident indicates that the situation involved all 9th graders at UHSA, stemming from a prior incident in October 2023, and that there was a threat posted in an "anonymous student chat."

24.     During this time, a message was posted about a high school ("UMHA") student which said negative things, which caused Minor Doe to post a message on the Instagram page apologizing to the UMHA student and telling people who could see the post that they should not post mean comments about the UMHA student, who had lost a parent and was being bullied.

25.     Minor Doe and Minor Doe's friend deactivated the page shortly after this occurred in December 2023.

26.     The Instagram page became popular during the winter break, to the point that Minor Doe and the other UMSA student realized that they could not handle all of the responses they were receiving.

27.     Despite the above occurring in December 2023, no one from SPS informed any members of the community about the situation with the police, any posts, or the account until nearly a week later.

28.     Though SPS later included this police report in the "hearing packet" provided to Plaintiff and her counsel, Minor Doe is not mentioned nor referenced in the report.

29.     On or about January 7, 2024, Plaintiff Jane Doe was made aware of social media threats made against students and staff at UMSA by another parent.

30.     Upon information and belief, a staff member at UMSA sent the screenshot to the principal of the school.

31.     The first message, which was posted on Instagram in December 2023, stated that the person was going to "shoot up university with [names redacted] inside of it."

32.     One of the individuals named in this message was the high school student who was being bullied and which required police involvement.

33.     Plaintiff's child, Minor Doe, was named on the second message as someone that this person would "most likely kill," along with many other names including a teacher who had been accused of sexual misconduct who did not work at UMSA, but rather who worked at MacArthur K-8 University Academy ("MacArthur"), a school which Minor Doe never attended.

34.     Minor Doe does not know nor have any interaction with several of the named students or staff from MacArthur who were listed in the second message.

35.     Concerned about these messages that were making the rounds with UMSA parents, Plaintiff kept Minor Doe home from school.

36.     On this same day, Defendant Green, the Superintendent of SPS, informed parents in an email that she had been made aware of a threat over the winter break and that there would be an increased presence at UMSA.

37.     On or about this date, Minor Doe and the other student with whom s/he ran the Instagram page attempted to reach out to Ms. Jones, the counselor at UMSA, to inform her about the page; however, as stated herein, the school was dismissed early and Minor Doe was not in attendance because Plaintiff kept him at home due to his name being listed in the message.

38.     The following day on January 8, 2024, parents were sent an email stating that there would be an early dismissal and a remote learning day on January 9, 2024 for UMSA, MacArthur K-8 University Academy, a school that shares a campus with UMSA, and University High School Academy ("UHSA").

39.     The mishandling of this announcement – as later admitted to by Defendant Bland – caused extreme chaos with parents and students.

40.     Upon information and belief, several students, parents and staff shared a screenshot of the alleged threats, and Minor Doe did not realize that s/he had been listed until the post had been distributed to others.

41.     Plaintiff was told that all of the students listed in the messages would be contacted to have a 1:1 meeting with District administrators.

42.     That same day, Vice Principal Kelly Patterson contacted Plaintiff to schedule a meeting for Tuesday, because Minor Doe was one of the people who had been threatened.

43.     Plaintiff went to work on January 9, 2024 and took Minor Doe with her.

44.     Minor Doe's father called Plaintiff that morning and informed her that a Southfield Police detective had contacted him and wanted to speak with Minor Doe, which caused Plaintiff and Minor Doe to leave their job.

45.     After Plaintiff and Minor Doe's father questioned Minor Doe, Minor Doe admitted that s/he and another student, a friend from UMSA, had started a UMSA "confessions page" on Instagram sometime in November 2023, which contained a Google form link where individuals could submit information through the link.

46.     Students could write anonymous confessions via the Google form link and submit the form, and Minor Doe and Minor Doe's friend would screenshot the confession and upload them to the private UMSA confessions page.

47.     Minor Doe told them that the page gained popularity over the winter break in late December 2023 and they decided to shut it down.

48.     Minor Doe does not know whether Minor Doe or Minor Doe's friend posted any particular messages, but Minor Doe did not see the alleged threats until Plaintiff showed them to Minor Doe.

49.     Plaintiff and Minor Doe's father contacted an attorney to intervene in the event of any criminal investigation.

50.     Plaintiff had a meeting scheduled with the Deputy Superintendent, Lanissa Freeman, and Mr. Jackson, the Chief of Staff, because Minor Doe was one of the students

threatened. However, after being unable to make the meeting, Plaintiff requested to reschedule, but no response was received.

51.    Also on January 9, 2024, Defendant Green sent an email to parents stating the investigation had concluded and the case had been turned over to the Oakland County Prosecutor's Office for formal charges.

52.    Plaintiff did not hear from anyone with SPS on this date.

53.    However, on the evening of January 9, 2024, SPS held a school board meeting in which Board President, Defendant Ashanti Bland, in addressing the situation, that the Board "took the wrong course of action" and that "it was a reaction and not proactive…"

54.    Defendant Bland stated, regarding the situation involving Minor Doe and the purported threats made by him:

> We are glad to say that in conjunction with not only Southfield Police Department and the FBI that we have found the person that is responsible for this you do not have to worry about your children interacting with this person at all, um, anyone else found to have been, um, in conjunction or involved with this what also be removed, um, just to give some clarity the legal proceeding regarding this is very different than the district proceeding this person violated the code of conduct and will be expelled, um, for many of you. I'll just clarify exposure means that this person cannot attend school in the state of Michigan for at least 180 days which is a full school year, um, the other piece of that is because of the federal nature of this I doubt this person sees a school anytime soon…

55.    Defendant Bland further stated that SPS would "move forward with more fidelity if you allow us to regain our trust," asked the public to "[p]lease accept our apology," and finally stated that "I don't think anyone intended to allow trust we have built with this community to be severed."

56.     At the meeting, parents were questioning the Superintendent and Board President about the social media threats. They assured parents that the person was found and would be expelled. They said the student would not be able to enroll in any Michigan school for 180 days. The President, Ashanti Bland also stated that she does not even want the student's parents on campus.

57.     On Wednesday, January 10, 2024, SPS sent an email stating that that day would be a mental health day.

58.     Upon information and belief, also on the 10th, a staff meeting was held at which Defendants Green and Bland informed the staff that the student who sent the threats was found and will be expelled from SPS. Defendant Bland also stated that the student would not be able to enroll in any Michigan school for 180 days.

59.     Defendants had still not been in contact with Plaintiff or Minor Doe's father.

60.     On January 11, 2024, Minor Doe logged onto Schoology (the remote learning platform) at around 7:45 a.m.

61.     Minor Doe was able to attend the 1st and 2nd hour classes remotely. While waiting to enter the 3rd hour virtual classroom, Minor Doe was logged out of Schoology[1] and his/her account was deactivated. His/her access was cut off around 10:10 am.

62.     Plaintiff contacted an employee at UMSA who stated that they would contact the principal, Orlando Bogins. In the interim, Plaintiff contacted Oakland Schools IT and was told Minor Doe's profile could not be found.

---

[1] "Schoology" is an online learning management system that supports curriculum management, mobile learning, and district-wide communication. For parents/guardians of students, Schoology permits them to keep track of their child's calendar, projects, assignments, and day-to-day activities.

63.     Upon information and belief, an employee of UMSA contacted Principal Bogins regarding the situation with Minor Doe's access and was told to not get involved and to "leave it alone."

64.     After sending Principal Bogins an email stating that Minor Doe's access was cut off, Plaintiff observed that an email had been sent at from James V. Jackson, the Chief of Staff of SPS, stating that Minor Doe was suspended pending board hearing for violating the code of conduct.

65.     The supposed violation of the code of conduct was not listed in the email/letter attached, nor was the length of the suspension included.

66.     The email further stated that Plaintiff would hear from SPS regarding the details of the matter and scheduling a hearing.  Lastly, the email stated that a parent or guardian could pick up his learning materials from the administration building.

67.     Upon receipt of this email, Plaintiff went to the administration building to pick up the learning materials at the end of the regular school day, only to find a general reading and math packet, and a parent packet.

68.     Minor Doe was enrolled in Pre-Algebra, Science, World History, English, Band, and Computers/Media, yet the packets did not reflect any of the standards/rigor in his/her classes.

69.     That same evening, there was a special parent meeting called to discuss the alleged threats.

70.     During this meeting, Defendant Bland stated that the person who made the threats was a 7th grade boy.

71.     The Chief of Staff, James V. Jackson, stated that the threats came from one person and that SPS forwarded this student's name to the prosecutor's office.

72.     Parents were further told that the student was banned from all SPS campuses and technology/learning platforms.

73.     On this same date, another email was sent from Principal Bogins, stating that SPS had success in identifying an individual.

74.     Bogins mentioned that the Southfield Police Department was working with the Oakland County Prosecutor's office and that they would continue to keep parents abreast of any new findings.

75.     The email stated that: "In the interim, the individual has been removed completely from all of SPS buildings and grounds, activities on and off campuses, not allowed to engage in any virtual remote learning, and all access to any SPS platforms[ ](email, schoology) has been removed."

76.     On January 17, 2024, a "re-entry" letter was sent to all parents of UMSA and Macarthur from Defendant Green wherein she stated that she was informing them of a "social media threat that occurred during the recent winter break." Defendant Green further acknowledged that she learned of the threat from the Southfield Police Department over the break that targeted students and staff members of the campus community.

77.     She further stated that she would provide more information once the investigation was completed and that all further comments would be deferred to the Southfield Police Department.

78.     Another email was sent this same date from Principal Bogins, with an attachment from Dr. Green, which stated that SPS had decided to return to school as a result of "confirmation from the police department that the potential threat is neutralized and the student is currently suspended pending a School Board Expulsion Hearing."

79.     She further stated in the letter that "[a]t times the District has temporarily deferred to the ongoing investigation of law enforcement to avoid any form of unnecessary obstruction."

80.     The email attachment from Defendant Green also outlined the security plan that would be in place at UMSA.

81.     On January 19, 2024, an appreciation email was sent from Defendant Green, thanking parents, students and staff for a successful return to school.

82.     During the entirety of this time, Defendants did not reach out to Plaintiff or Minor Doe's father to discuss anything related to his/her suspension or expulsion.

83.     On January 23, 2024, Plaintiff sent an email requesting that Minor Doe be able to have access to the curriculum and all assignments, and not just a generic packet. This email was sent to Principal Bogins, Vice Principal Patterson, Chief of Staff Jackson, Defendant Green, Deputy Superintendent Freeman, and all members of the school board.

84.     The email further outlined Plaintiff's concerns about Minor Doe's educational needs not being met, his/her failure to receive the same assignments that his/her classmates were receiving, and that Plaintiff had not been contacted regarding the matter.

85.     On January 25, 2024, Deputy Superintendent Freeman sent an email to Plaintiff stating that she was providing a link to documents for Minor Doe to keep up with his/her missed assignments, and that the assignments would be graded along with providing a summary of performance to keep her informed of his/her progress.

86.     Ms. Freeman further stated access to SPS's digital platforms was being restricted as a "direct result of the violations of the Southfield Public School's Student Code of Conduct. Specifically, inappropriately using an electronic device resulted in the following violations:

> Threats of violence
> Off-campus misconduct in general

> Harassment
> Bullying & intimidation of others
> Safety concerns
> Disruptive conduct
> Gross misbehavior

87.     At no time, even as of this filing, was Plaintiff notified as to what the factual allegations were claimed by Defendants to support Minor Doe's suspension.

88.     At this point, Plaintiff was forced to hire undersigned counsel to reach out to SPS to inquire as to the status of Minor Doe's enrollment.

89.     Plaintiff's undersigned counsel sent an email to James Jackson on January 28, 2024, requesting when a hearing would be set and advising that the Code of Conduct did not seem to contain the process being followed by SPS.

90.     Counsel noted that as of the January 11, 2024 letter sent by Mr. Jackson, a Board of Education hearing had already been anticipated, even though that was not the first step in the Code of Conduct.

91.     No response to the email was received, but on February 3, 2024, Mr. Jackson emailed Plaintiff to inform her that SPS was "in the process of scheduling a building level hearing" for Minor Doe which would be held virtually on February 6, 2024, and further indicated that Minor Doe's classwork had been compiled and was available for pick up at the administration building.

92.     There was no acknowledgement of the email sent to Mr. Jackson by undersigned counsel, though the email invited Plaintiff to advise of legal counsel who might be in attendance.

93.     On February 4, 2024, undersigned counsel informed Mr. Jackson that they should include her on correspondence sent regarding this matter, and informing him of the need to

reschedule and that Plaintiff was requesting that the hearing take place in-person rather than via Zoom.

94.     On February 5, 2024, Mr. Jackson emailed Plaintiff, copying Plaintiff's counsel for SPS as well as the Deputy Superintendent Lanissa Freeman, "confirming" the she was available and wished to proceed with the hearing tomorrow without her counsel.

95.     The email continued that the purpose of the hearing was to "discuss the alleged violations of the Student Code of Conduct and determine if this matter should be referred to the Board of Education for a formal disciplinary hearing."

96.     The email listed the violations that would be discussed from Article V, Sections:

- #7 Knowledge or (sic.) Dangerous Weapons or Threats of Violence
- #24 Harassment, including Sexual Harassment, Bullying, Hazing
- #27 Safety Concerns
- #29 Disruptive Behavior
- #31 Gross Behavior

97.     Counsel for Plaintiff responded that the clients would not be available the next day, either, and stated her intention to attend the hearing.

98.     After several follow-ups, the parties agreed to hold the hearing on February 8, 2024 at 6 p.m.

99.     At the hearing, Plaintiff's counsel asked to be informed of the allegations supporting the charges that had been provided.

100.    Moreover, the hearing was held by the principal from Southfield High School for the Arts and Technology, David Reese, rather than Minor Doe's principal, as the Student Code of Conduct seemed to suggest.

101.    In addition, counsel for SPS did not provide factual allegations and instead had counsel for Plaintiff, Plaintiff and Minor Doe's father state why they did not believe Minor Doe had violated those sections of the Student Code of Conduct.

102.    Regarding the procedure itself, Plaintiff's counsel stated that the entire hearing violated Minor Doe's due process and First Amendment rights as s/he was being compelled to speak, even though s/he had not been informed of what SPS believed s/he had done.

103.    Nevertheless, Plaintiff, her counsel, and Minor Doe's father provided commentary regarding their understanding of what was being alleged, noting that:

    a.   Defendants deprived Minor Doe of his/her civil rights and violated the Code of Conduct;

    b.   The language in the Code of Conduct do not fit with Minor Doe's actions, in addition to the fact that no notice was given of the factual basis to support the charges;

    c.   Minor Doe did not write the posts himself but was merely posting them and did not closely review what was posted;

    d.   Minor Doe and the UMSA student received nearly 250 responses to the Google form on the Instagram page they managed;

    e.   No one knows nor has ever tried to find out who sent the Google form responses;

    f.   Minor Doe could not fully access his/her schoolwork nor receive any instruction in the time s/he has been suspended;

    g.   Defendants Green and Bland informed the public that Minor Doe made the threats, was going to be prosecuted, and was definitively going to be expelled, without ever having a hearing; and

h.   Other statements which may be discovered during

104.    At the conclusion of the meeting, Plaintiff's counsel asked when there would be notification of any findings from the hearing.

105.    Counsel for SPS stated that Plaintiff would receive a response within 10 days.

106.    However, no follow-up from the district was received until on or about February 29, 2024, when Plaintiff received a call scheduling a hearing with the Board for March 18, 2024 at 5 p.m. from the administrative assistant to the Superintendent and the Board.

107.    On February 29, 2024, Plaintiff's counsel emailed Mr. Jackson, requesting whether any additional information regarding any findings or what would occur at the meeting would be provided.

108.    On March 4, 2024, Mr. Jackson responded that a hearing packet would be sent for review prior to the hearing.

109.    On March 9, 2024, Plaintiff's counsel followed up again requesting the packet.

110.    On or about March 11, 2024, the executive assistant sent the board packet.

111.    The packet contained a letter, dated March 6, 2024, written to Plaintiff, from Defendant Green, which stated that Minor Doe had been "allegedly found to be in violation of the [Code of Conduct], Article V, Section D: Specific Prohibited Behaviors/Conduct:

- #07 Knowledge of Dangerous Weapons or Threats of Violence

- #24 Harassment, including Sexual Harassment, Bullying, Hazing

- #27 Safety Concerns

- #29 Disruptive Behavior

- #31 Gross Behavior

The letter further stated that Minor Doe had been "recommended to the Board of Education for further review to officially determine the status of your child in Southfield Public School District."

112.   The letter noted that Minor Doe could have representation by legal counsel and "present information or persons having testimony pertinent to the consideration of this matter."

113.   The packet included a purported checklist which stated that it had: Student Information, Violations: Code of Student Conduct; Letters Sent to Parents; Administrative Summary and Recommendations; Police Contact (Report attached or explanation of contact).

114.   The line next to "Supporting Documentation" was not checked off.

115.   The packet contains documents not previously sent to Plaintiff or her counsel prior to the March 18, 2024 hearing, including a police report that does not relate to Minor Doe.

116.   The screenshots of the Instagram account, which had been provided at the "building level" hearing, indicates that it is "run by 2 people" and that recipients could follow a link below to send their confessions.

117.   Again, at the hearing, Plaintiff's counsel stated that the proceedings were flawed because no factual support was provided by SPS related to any of the above charges.

118.   At the hearing, this time with Defendant Green and Defendant Board members Bland, Ware-DeVaull, Belk, Joyce and Holloway, and Leslie L. Smith-Thomas[2], along with the counsel for SPS, Mr. Pitchford, in attendance, Plaintiff's counsel and Minor Doe's parents repeated many of the same statements raised during the prior hearing.

---

[2] Ms. Smith-Thomas was present at the meeting but abstained from voting on Minor Doe's expulsion, due to what she stated was a conflict of interest and because she had additional questions. She is not a named party in this lawsuit.

119.     Plaintiff's counsel noted the impropriety of having Defendant Bland – make a decision on Minor Doe's fate when she had already made public statements stating that s/he would be expelled before any evidence had been viewed.

120.     It was clear that Minor Doe was not going to receive a fair and impartial hearing, given the comments made by Defendants Green and Bland, who prejudged her/him and were seeking to absolve SPS of liability when the community members questioned them in January about the handling of the social media issue.

121.     During the March 18 hearing, Defendant Bland appeared visibly opposed to Plaintiff and Minor Doe's position, often making side comments throughout the proceedings which were repeated out loud by Mr. Pitchford.

122.     It was also apparent that many of the Board members did not have any of the facts that Plaintiff, her counsel, or Minor Doe's father had presented at the previous hearing, including having no understanding of how the Google form responses worked or that another student was involved in making the posts.

123.     Further, several character witnesses made comments in support of Minor Doe.

124.     However, upon information and belief, the Board had already decided to expel Minor Doe before the hearing commenced.

125.     Plaintiff's counsel made much of the fact that Minor Doe was not being provided with proper process and that s/he could not adequately respond to charges without knowing what actions of his/her were at issue.

126.      Plaintiff's counsel further presented evidence to the Board of some of the text messages exchanged with the other person who ran the Instagram account with Minor Doe.

127.     Mr. Pitchford stated that Minor Doe and Plaintiff were strongly encouraged to provide the name of the other student, which they declined to do.

128.     Following a brief period in which the Board allegedly deliberated, the hearing attendees were brought back into the meeting room and Minor Doe was told that, by a vote of 5-0 – with one abstention – Minor Doe would be expelled.

129.     There was no pronouncement of which charges Minor Doe was found to be liable or of anything further that would be done with respect to his/her enrollment.

130.     Plaintiff's counsel inquired as to what the effective date would be of the decision, to which Defendant Green appeared to state that it would be "immediately," however, Mr. Pitchford stated out loud that he would let the parties know.

131.     On the evening of March 19, 2024, Mr. Pitchford sent Plaintiff's counsel an email stating that "the student in this matters expulsion will be effective upon the receipt of the determination letter. It is my understanding that the same will be sent to his/her parents before the end of this week."

**STUDENT CODE OF CONDUCT PROVISIONS**

132.     Section II of the Code, titled the SOUTHFIELD PUBLIC SCHOOLS RESPECT CODE, provides that "[i]f a student offends another individual via his/her communication, it is expected that he/she will attempt to make amends with the offended individual."

133.     Under Section III.E of the Code, the building administrators' responsibilities to students include:

…

3.   Enforce fairly the policies of the District;

4.  Use appropriate methods for handling discipline problems to ensure that a student's rights are respected;

5.  Maintain proper disciplinary measures that protect the  rights of the individual to learn in a safe and orderly environment; and

6.  Ensure that school rules and due process procedures are clearly presented to students, parents and faculty

134.    Section III.F provides that the Superintendent's responsibilities to students include:

…

- Advise principals on serious student disciplinary matters;

- Support principals who have acted in accordance with the policies of the District and Michigan law;

- Consider and take appropriate disciplinary action for student misconduct when long-term suspension is considered;

- Consider and make recommendations to the Board on student disciplinary action when expulsion is a consideration; and

- Review with administrators the policies of the Board of Education and State laws relating to student rights and discipline.

135.    Pursuant to Section III.G, the Board of Education's responsibilities to students include:

1.  Establish a procedure for the development and revision of a student code of conduct;

20

2.  Ensure that school employees implement local Board policies and other Board recommendations relative to the Student Code of Conduct; and

3.  Act on recommendation for expulsion and discipline.

136.   Section IV of the Code of Conduct provides, in part, at the outset that: "[i]n all cases, the District shall attempt to make discipline prompt and equitable and to have the punishment match the severity of the incident."

137.   Section IV.B provides for "Formal Discipline" and states in its introduction:

Formal discipline removes the student from school. It includes teacher initiated suspensions, suspension for up to ten (10) school days, long-term suspensions for eleven to eighty-nine (11-89) days, expulsion for ninety (90) up to one hundred eighty (180) school days, and in certain extreme or legally mandated circumstances, permanent expulsion. Before a student may be suspended or expelled from school, there are specific procedures that must be followed.

138.   Section IV.B.1 pertains to "Due Process Rights – Suspension" and provides for different processes depending on whether a suspension is for one day, up to 10 days, or falls under "Expulsions/Long-Term Suspensions."

139.   For suspensions up to 10 days, the following procedures apply:

When a student is being considered for a suspension of ten (10) days or less, the administrator in charge will notify the student of the charge(s) during an informal hearing, prior to removal. The student will then be given an opportunity to explain his/her alleged misconduct and the administrator will then provide the student with the evidence supporting the charge(s). After that informal hearing, the administrator will make a decision whether or not to suspend. If a student is suspended the administrator will attempt to contact the parents within 24 hours. Parents will be notified, in writing, of the reason for and the length of the suspension. The suspension may be appealed within three (3) days after receipt of the suspension notice, to the building principal. The request for an appeal must be in writing. Suspension from co-curricular and extra-curricular activities may not be appealed.

140.    For suspensions longer than 10 days or for expulsions, the following procedures are applicable:

> If a student is considered for long-term suspension or expulsion, a hearing will be conducted with the principal. Following this hearing, the student may appeal the principal's decision to the Superintendent. The request for appeal must be in writing and received by the principal within ten (10) days of his/her decision to suspend or expel. If a student subsequently disagrees with the Superintendent's decision, he/she may appeal to the Board of Education within ten (10) days. The student will subsequently receive a formal letter scheduling a hearing before the Board, which will be addressed to the parent(s)/guardian(s) and shall include:
>
> a. The charge and related evidence;
> b. The time and place of the Board hearing;
> c. The length of the recommended suspension or expulsion;
> d. A brief description of the hearing procedure;
> e. A statement that the student may bring parents, guardians, and legal counsel;
> f. A statement that the student may give testimony, present evidence, and provide a defense; and
> g. A statement that the student may request attendance of school personnel who were party to the action or accused the student of the infraction.
>
> The hearing before the Board will be formal and testimony will be received as appropriate and available from school administration, the student, his/her parent(s)/guardian(s), witnesses, his/her representative and/or legal counsel. As required by Michigan's Open Meetings Act, the Board hearing will be in open session unless the student or the student's parent(s)/guardian(s) request a closed session. All opportunity to earn grades or credit ceases when a student is expelled.
>
> If possible and appropriate, the District will make a sincere effort to impose disciplinary actions that will allow the student to remain in school. If a disciplinary action does not result in removal from school, it is not appealable. However, all opportunity to earn grades or credit ceases when a student is expelled.
>
> In accordance with State law, specifically MCL 380.1311(1), the District may expel or suspend a student (for a discretionary period

22

of time) who is found guilty of a gross misdemeanor or persistent disobedience.

141. Section V.D of the Student Code addresses specific types of misconduct.

142. Section V.D.7, Knowledge of Dangerous Weapons or Threats of Violence, provides:

> Because the Board believes that students, staff members and visitors are entitled to function in a safe school environment, students are required to report knowledge of dangerous weapons (as defined in #5 above) or threats of violence to the principal. Failure to report such knowledge shall subject the student to discipline.

143. Section V.D.24, Harassment, provides broad definitions of what constitutes harassment and provides, in pertinent part, that "this policy applies to all activities on school property and to all school-sponsored activities, whether on or off school property."

144. Section V.D. 27, Safety Concerns, provides:

> Students should not engage in any activity that threatens the safety of students, staff or visitors. Students should not use roller blades, bicycles, skateboards and scooters in school hallways or District pedestrian traffic areas. Use of any means of travel within buildings and on grounds by other than generally accepted practices where appropriate is prohibited. Students violating this expectation will be subject to disciplinary action, which may include suspension or expulsion.

145. Section V.D.29, Disruptive Conduct, provides:

> A) Conduct which materially and substantially interferes with the educational process. (B) Horseplay: The act of bodily contact, such as pushing, pulling, tripping, etc. (short of injury and without intent to harm) in or on school property or going to or from school, including any activity under school sponsorship. (C) Malicious mischief including "pranks." This could include disruption of performances and ceremonies with "catcalls," paraphernalia and any actions used to distract and demean a student, employee, event or activity. Students who

engage in any of the above referenced conduct shall be subject
to suspension or expulsion.

146.     Section V.D.31, Gross Misbehavior, the last subsection in the code, provides:

> The act of deliberate or willful conduct detrimental to the
> normal functioning of a program or school related activity,
> which may include, but is not limited to, prohibited conduct as
> outlined within the Code, computer/internet misuse, gambling,
> open defiance, persistent disobedience and acts of poor
> judgment which either interrupt normal school routine or
> threaten the health, safety and welfare of others. If a student is
> found guilty of gross misbehavior he/she shall be subject to
> suspension or expulsion.

147.     In accordance with the above, and as more fully stated herein, Plaintiff submits
that Defendants failed to properly follow the Code of Conduct, thereby violating Minor Doe's
rights.

148.     Plaintiff further submits that these provisions in the Code of Conduct are
unconstitutionally vague such that no reasonable person – of any age, much less a 12 year old –
would be able to understand what is being proscribed.

149.     Plaintiff and Minor Doe request relief as set forth below.

### COUNT I – 42 U.S.C. 1983 (Procedural Due Process)
### (By All Plaintiffs Against All Individual Defendants in their Individual and Official Capacities)

150.     Plaintiff incorporates and re-alleges the above paragraphs as if stated fully herein.

151.     The Fourteenth Amendment to the Constitution of the United States creates a
right to not be deprived of life, liberty or property without due process of law.

152.     The United States Supreme Court has said that due process, even for suspensions
of 10 days or less, "requires, in connection with a suspension of 10 days or less, that the student
be given oral or written notice of the charges against him and, if he denies them, an explanation

of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975).

153.   Minor Doe has a protected property interest in his/her continued education.

154.   Minor Doe has a protected liberty interest in his/her good name, reputation, honor, and integrity.

155.   Minor Doe can show a stigma, plus his/her protected property interest, in continuing education.

156.   Minor Doe has been prejudiced by the decisions of Individual Defendants and by Defendants' continuing violation of Minor Doe's rights, which include but are not limited to:

    a.   Failing to follow MCL 380.1310d for suspension and/or expulsion;

    b.   Not following SPS' Code of Conduct with regard to the due process for suspension and/or expulsion of a student, including not advising of what the length of time was for the suspension, as different protections and procedure attached, including but not limited to the failure to: (1) immediately advise Plaintiff and/or Minor Due of their rights under the Code of Conduct; (2) hold a meeting with the UMSA principal; (2) inform Plaintiff and/or Minor Doe of the charges at the outset; (3) provide any decisions whatsoever; (4) failure to hold a hearing with the Superintendent; and (5) provide appeal rights.

    c.   Publicly announcing a decision to expel Minor Doe and further making the decision to expel Minor Doe prior to hearing any evidence;

    d.   Not advising as to what the factual allegations were so that Minor Doe could appropriately respond;

    e.   Punishing Minor Doe and/or Plaintiff for not providing the name of the other student involved in the Instagram posts;

    f.   Charging Minor Doe with violations that were not supported by the Code of Conduct;

    g.   Failing to explain which of the alleged violations were substantiated and the reasons for the same; and

    h.   Not reviewing the evidence or testimony provided on behalf of Minor Doe.

157.    Minor Doe's information and defenses to the allegations against him/her would have led to a different outcome but for Defendants' violation of Minor Doe's rights. This violated Minor Doe's clearly established rights.

158.    For the reasons stated above, Defendants failed to provide proper procedural due process for this case and tainted the proceedings. This violated Minor Doe's clearly established rights.

159.    In engaging in procedural due process violations against Minor Doe, Defendants acted with reckless, wanton, or callous indifference to Minor Doe's protected constitutional rights, which entitles Minor Doe to all damages available under law, in an amount appropriate to provide redress for Defendants' violations.

160.    Defendants violated Minor Doe's clearly established rights by expelling Minor Doe without due process.

161.   As a direct and proximate result of Defendants' violation of Minor Doe's rights, Defendants caused Plaintiff and Minor Doe to suffer irreparable harm, including the loss of their constitutional rights.

162.   Because Individual Defendants' actions were willful, wanton, and malicious, and showed a complete and deliberate indifference to and conscious disregard for Plaintiff's and Minor Doe's rights, Plaintiff seeks an award of punitive damages in an amount a jury deems sufficient to punish and deter Individual Defendants and other similar entities from like conduct in the future.

163.   Plaintiff and Minor Doe are entitled to compensatory damages for Defendants' violation of Minor Doe's constitutional rights.

164.   Plaintiff and Minor Doe are entitled to punitive damages for Defendants' reckless or callous indifference to Minor Doe's federally protected rights.

165.   Plaintiff and Minor Doe are entitled to recover costs, including reasonable attorney fees, pursuant to 42 USC § 1983.

166.   Plaintiff and Minor Doe are entitled to prospective injunctive and declaratory relief and a permanent injunction prohibiting further violations of Minor Doe's constitutional rights.

167.   Minor Doe is entitled to immediate reinstatement to UMSA, to resume all school activities, and to complete his/her education at UMSA.

168.   Minor Doe is entitled to an expungement of his/her record and the removal of any reference to an expulsion from SPS from Minor Doe's transcript and permanent record.

169.   Moreover, Defendants must make changes to their policies, practices, customs, and procedures by following the laws of this State, federal law, and providing due process to

pupils whom it disciplines, and implementing expulsion after proceeding through the appropriate factors as set forth by the Michigan legislature.

170.     Implementing such changes will not impose undue fiscal and administrative burdens upon SPS.

**COUNT II – 42 U.S.C. 1983 (First Amendment)**
**(By All Plaintiffs Against All Individual Defendants in their Individual and Official Capacities)**

171.     Plaintiff incorporates and re-alleges the above paragraphs as if stated fully herein.

172.     The First Amendment to the Constitution of the United States provides that:

173.     Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

174.     Similarly, the Michigan Constitution provides that:

175.     Every person may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press.

176.     This protection has been incorporated as against state and local actors, via the Fourteenth Amendment.

177.     By expelling Plaintiff's child, Minor Doe, for:

a.   Not speaking and revealing the identity of the other student who participated in the Instagram posts; and

b.   Plaintiff speaking up against the lack of information provided to Plaintiff and Minor Doe's father regarding the process of Minor Doe's suspension.

28

Individual Defendants violated the clearly established rights secured to him/her by the First and Fourteenth Amendments.

178.    The Individual Defendants were deliberately indifferent to the constitutional rights of Plaintiff and Minor Doe.

179.    As a direct and proximate result of Individual Defendants' misconduct detailed above, Plaintiffs sustained the damages alleged herein.

180.    Individual Defendants' misconduct, detailed above, also caused Plaintiff significant and ongoing emotional distress and distrust of SPS and its administration. Plaintiff continues to suffer economic losses, including considerable financial expenses for having to find another school for Minor Doe and hire an attorney to litigate against the school district's actions they will continue to incur these losses and expenses in the future. Plaintiff incorporates the preceding paragraphs as though fully stated.

181.    Plaintiff exercised her various First Amendment rights, via expression of opinions and advocacy, on matters of public concern relating to SPS, as described more fully above.

182.    Defendants' actions, seeking to expel her son from the district, were in retaliation for, and a violation of, Plaintiff's exercise of federally protected First Amendment rights.

183.    Defendant's actions against Plaintiff were the proximate cause of the violation of Plaintiff's federally protected First Amendment rights under 42 USC 1983.

184.    At all relevant times, Individual Defendants acted under color of state law, using the power of their position, title and authority, to retaliate against Plaintiff and Minor Doe, as described above.

185.    Defendant's First Amendment retaliation against Plaintiff and Minor Doe has caused them considerable damages, and entitles Plaintiff and Minor Doe to specific relief, as

stated herein and below.

## **COUNT III – DECLARATORY JUDGMENT (ALL DEFENDANTS)**

186.    Plaintiff incorporates and re-alleges the above paragraphs as if stated fully herein.

187.    Pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57, Plaintiff seeks a declaratory judgment from this Court as follows:

    a.   SPS' Code of Conduct is unconstitutionally vague;

    b.   Defendants violated MCL 380.1310d in its handling of the discipline, suspension and expulsion of Minor Doe;

    c.   Defendants violated Minor Doe's constitutional rights in its handling of the discipline, suspension and expulsion of Minor Doe;

    d.   Due process requires that Defendants provide Plaintiff and Minor Doe with the facts related to the specific Code of Conduct provisions that Minor Doe was alleged to have violated.

    e.   The failure of the Code of Conduct to take into the age of the student renders it unconstitutional;

    f.   Defendants did not follow the procedures set forth in the Code of Conduct for disciplining Minor Doe;

    g.   Having openly biased people deciding Minor Doe's discipline, who decided s/he would be expelled before hearing evidence, violated Minor Doe's constitutional rights;

    h.   Minor Doe is entitled to reinstatement into school; and

     i.    Minor Doe is entitled to have his record expunged of discipline related to his/her suspension and expulsion.

### COUNT IV – INJUNCTIVE RELIEF (ALL DEFENDANTS)

188.    Plaintiff reincorporates

189.    Pursuant to 28 U.S.C. §2202 and Fed. R. Civ. P. 65, Plaintiff requests relief in the more of an injunction including a temporary restraining order and/or preliminary and permanent injunctions.

190.    Injunctive relief is necessary because both Plaintiff and Minor Doe will suffer irreparable harm.

191.    Minor Doe should be reinstated to UMSA as soon as possible.

192.    Defendants should be enjoined from suspending and/or expelling students without following the law and the current Code of Conduct procedures.

193.    Plaintiff and Minor Doe may request further relief throughout these proceedings.

### PRAYER FOR RELIEF

PLAINTIFF, JANE DOE, on behalf of herself and as proposed next friend of Minor Doe, RESPECTFULLY REQUESTS that this Court enter judgment against Defendants as follows:

1.    Actual damages in whatever amount to which Plaintiff is entitled;

2.    Exemplary damages in whatever amount to which Plaintiff is entitled;

3.    An award of interest, costs, and reasonable attorney fees; and

4.    An order awarding whatever other equitable relief appears appropriate at the time of final judgment, or prior.

Dated:  March 23, 2024

                Respectfully Submitted,

/s/ Carla D. Aikens
Carla D. Aikens (P69530)
Rejanaé Thurman (P85701)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Street, Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
rejanae@aikenslawfirm.com